The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOGGYPHONE LLC,<br>　Plaintiff,<br><br>v.<br><br>TOMOFUN, LLC,<br>　Defendant | NO. 2:19-cv-1901-BJR<br><br>**CLAIM CONSTRUCTION ORDER** |

## I.　INTRODUCTION

At issue in this case is the construction of several disputed claim terms of U.S. Patent No. 9,723,813 ("the '813 patent"), owned by Plaintiff DoggyPhone LLC. Plaintiff has accused Defendant Tomofun LLC of infringing that patent. Having reviewed the parties' claim construction briefs and responses, and having held a *Markman* claim construction hearing, the Court rules as follows.

## II.　BACKGROUND

The '813 patent provides a system for facilitating remote human-pet communication, and is referred to as an "Internet Canine Communication System," or "ICCS." The patent abstract states, "[t]he ICCS may include a base station or similar device that is configured to deliver treats to a dog and to transmit audio/visual communication between the dog and a remote client

CLAIM CONSTRUCTION ORDER
- 1

device operated by a human user." '813 Patent, p. 1. Figures 7 and 8, below, illustrate certain example embodiments of the patent:



Defendant Tomofun manufactures and sells the interactive pet camera device known as the "Furbo," which DoggyPhone claims infringes the '813 patent. According to Tomofun, the Furbo is a "Dog Camera that enables a user to remotely see their pet, talk to their pet, and toss treats to their pet," via an app on the user's mobile device. Def.'s Opening Cl. Constr. Br. ("Def.'s Br.") at 7. This is a Furbo:



:

DoggyPhone has asserted Claim 7 of the '813 Patent against Tomofun. Claim 7 recites the following, with the disputed claim terms at issue in this litigation italicized:

CLAIM CONSTRUCTION ORDER

- 2

> 7. A system for communicating with a pet, comprising:
> a treat bin;
> a ***food dispenser*** that dispenses treats from the treat bin;
> an audio device;
> a ***delivery module*** that:
> receives ***a treat delivery command***; and
> ***in response to the received treat delivery command:***
> ***dispenses via the food dispenser at least one treat from the treat bin;***
> ***plays via audio device an audio signal that notifies the pet of availability of a treat; and***
> ***receives input from the pet;*** and
> ***a control*** that transmits to the delivery module a treat delivery command,
> wherein the system:
> in response to a first communication command received from a user, transmits to the delivery module the treat delivery command;
> plays at least one of ***live audio or video*** received from the user of a remote client device; and
> transmits to the remote client device at least one of ***live audio or video*** of the pet, wherein the system begins transmission to the remote client device of at least one of the audio or video of the pet ***in response to input from the pet.***

'813 Patent, col. 12:15-39. The parties have represented that there are six disputed terms, one of which contains two sub-parts, all discussed in more detail below. Generally, as to all disputed terms, DoggyPhone argues that the Court should construe the terms to have their "plain and ordinary meaning," as understood by a person of ordinary skill in the art in light of the patent. Tomofun's position as to the first two terms—"food dispenser" and "delivery module"—is that they are subject to "means treatment" under 35 U.S.C. § 112(f) and, lacking the requisite structure, are indefinite. For the remaining disputed terms, Tomofun asks for narrowing constructions, based on what it argues is intrinsic and extrinsic evidence, including the patent specification and prosecution history.

CLAIM CONSTRUCTION ORDER

- 3

DoggyPhone filed the complaint on November 22, 2019, but this case was stayed by court-approved stipulation in February 2021 pending resolution of Tomofun's petition for *inter partes* review (IPR). The Patent Trial and Appeal Board (PTAB) denied that petition and a motion for reconsideration of that denial, and the stay was lifted in January 2022. Both sides submitted opening claim construction briefs and responses, and on June 24, 2022, the Court held a *Markman* claim construction hearing, at which counsel presented oral argument. *See* Transcript of 6/24/22 *Markman* Hr'g, Dkt. No. 50 ("Tr.").

### III.   DISCUSSION

#### A.   Legal Framework for Patent Claim Construction

"When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute." *Markman v. Westview Instruments, Inc.*, 52 F.3d 979 (Fed. Cir. 1995) (en banc) (holding that claim construction is a matter of law). "The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman*, 52 F.3d at 976).

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citations omitted); *Markman*, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims."). "To the extent possible, claim terms are given their ordinary and customary meaning, as they would be understood by one of ordinary skill in the art in question at the time of the invention." *Intervet Inc. v. Merial Ltd.*, 617 F.3d

CLAIM CONSTRUCTION ORDER

- 4

1282, 1287 (Fed. Cir. 2010). "There are only two exceptions to this general rule: (1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics*, 90 F.3d at 1580).

The analysis of any disputed claim terms begins with the intrinsic evidence of record. *Vitronics*, 90 F.3d at 1582. Intrinsic evidence includes the specification, which "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("This court and its predecessors have long emphasized the importance of the specification in claim construction."). However, "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323; *see Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186–87 (Fed.Cir. 1998) ("there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification"). The Federal Circuit has acknowledged "that the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Id*.

### B. Means-Plus-Function Claiming: Terms 1 and 2

#### 1. Legal Framework of Means-Plus-Function Claiming

Of the six disputed terms at issue, Tomofun argues that two are "means-plus-function" terms that must be analyzed under 35 U.S.C. § 112(f). That statute provides that:

CLAIM CONSTRUCTION ORDER

- 5

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f). Congress's intent in enacting the statute was to strike "a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage only to the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-48 (Fed. Cir. 2015).

Whether Section 112(f) applies is a question of law for the court, dependent upon "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1346, 1348. In making that determination, courts "look first to intrinsic evidence, and then, if necessary, to the extrinsic evidence." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020) (quotation omitted). Courts ask whether the disputed term, "as the name for structure, has a reasonably well understood meaning in the art." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996).

The Federal Circuit "has long recognized the importance of the presence or absence of the word 'means,' [and] the use of the word 'means' in a claim element creates a rebuttable presumption that § 112, para. 6 applies."[1] *Williamson*, 792 F.3d at 1348. On the other hand, if the term "means" is absent from a claim element, then there is a rebuttable presumption that Section

---

[1] Paragraph 6 of 35 U.S.C. § 112 was replaced by § 112(f) when the Leahy–Smith America Invents Act ("AIA"), Pub.L. No. 112–29, 125 Stat. 284 (2011) took effect on September 16, 2012.

CLAIM CONSTRUCTION ORDER

- 6

112(6) does not apply. *Id*. The presence or absence of the word "means," however, does not ultimately control whether the statute applies. *Id*. "For example, generic terms such as 'mechanism,' 'element,' 'device,' and other verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they typically do not connote sufficiently definite structure and therefore may invoke [the means-plus-function statute]." *Egenera,* 972 F.3d at 1373 (quotations omitted). "Such terms may amount to generic terms or black box recitations of structure or abstractions. Or a term may amount to a coined nonce word—that is, a word invented for one occasion only." *Id*. (cleaned up). If that is the case, then Section 112(f) applies because the claim term is "simply a generic substitute for 'means.'" *Id*. at 1375. "What is important is ... that the term, as the name for structure, has a reasonably well understood meaning in the art." *Greenberg*, 91 F.3d at 1583.

Where, as here, the word "means" is not present, the rebuttable presumption that Section 112(f) does not apply can be overcome "if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1348 (cleaned up). "If the presumption against means-plus-function interpretation is overcome, [the court] must identify the claimed function and then determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Egenera*, 972 F.3d at 1373 (quotation omitted).

### 2. Term 1: "a *food dispenser* that dispenses treats from the treat bin"

Tomofun argues that the phrase "food dispenser" in Claim 7 is means-plus-function claiming that must be construed in light of Section 112(6). However, because the term does not include the word "means," the presumption is that it is not a means-plus-function term, and

CLAIM CONSTRUCTION ORDER

- 7

1  Tomofun has the burden of demonstrating otherwise. *Williamson*, 792 F.3d at 1348. As noted
2  above, it can do so by demonstrating "that the claim term fails to recite sufficiently definite
3  structure or else recites function without reciting sufficient structure for performing that
4  function." *Id*.

5      Tomofun argues that a "food dispenser" is merely a functional claim, defined by its
6  function, *i.e.*, a means of dispensing food, and that the term provides no definite structure that is
7  associated with that function. The Court disagrees. The word "dispenser" is not a "verbal
8  construct" as Tomofun argues, or a "generic term" one could simply substitute in this context for
9  "mechanism," "element," or "device." *Egenera, Inc*., 972 F.3d at 1373. As DoggyPhone argues,
10 the word "dispenser" is similar to the words "brake," "clamp," or "filter," in that it has taken on a
11 structural dimension signifying more than merely the function it performs. With the added
12 modification "food," particularly in the context of this patent, which pertains to *dog food*, the term
13 connotes an amount of structure sufficient to defy means-plus-function treatment. The additional
14 phrase "that dispenses treats from the treat bin," contained in the claim itself, adds still more
15 structure to the term. The Court concludes the term recites sufficiently definite structure such that
16 Section 112(f) does not apply, and, in the absence of a proposed alternative, adopts
17 DoggyPhone's construction of the "plain and ordinary meaning" of the term.

18     **3.  Term 2: "a *delivery module* that: receives a treat delivery command . . ."**

19     Again, because the term does not use the word "means," it is Tomofun's burden of
20 demonstrating that Section 112(f) applies. As to this term, however, the Court is persuaded that
21 Section 112(f) does apply. As the *Williamson* court noted, "'module' is a well-known nonce word
22 that can operate as a substitute for 'means' in the context of § 112, para. 6." 792 F.3d at 1350.

23

24 CLAIM CONSTRUCTION ORDER

25  - 8

DoggyPhone argues that "delivery" imparts the requisite degree of structure, but the Court is left to speculate as to what that structure might be. The Court therefore concludes that the term is a means-plus-function term, and that Section 112(f) applies.

Once a court has determined that Section 112(f) applies, the inquiry is twofold: "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function." *Williamson*, 792 F.3d at 1348. If a court cannot associate the claimed functions with any "corresponding structure, material, or acts described in the specification," the claim term is indefinite. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012). In this case, the claim at issue recites four functions associated with the delivery module: it (1) receives a treat delivery command; (2) dispenses a treat from the treat bin; (3) plays an audio signal to notify the pet of the treat; and (4) receives input from the pet. '813 Patent, col. 12:19-26.

The Court concludes that the specification provides sufficient "structure, material, or acts" corresponding to each of these functions. 35 U.S.C. §112(f). As to the first function, the delivery module "receives a treat delivery command" "via various input devices of the ICCS 100, including the training button 116, Wi-Fi antenna 126, Ethernet port 128, or the like." *Id.*, col. 3:27-29. Buttons and antennae are undeniably and definitely structural, as Figures 1 and 2 illustrate. As to the second claimed function, the delivery module dispenses treats using, "*e.g.,* including one or more of a carousel, slide, bin, actuator, motor[] for delivering treats,"[2] again describing certain acts and structural elements that correspond to the treat delivery function. *Id.*, col. 6:49-52; *see also* Figs. 3 and 4 (illustrating "treat compartments" and "treat passage" of

---

[2] In addition, as the Court notes *supra*, "food dispenser" (in the context of dogs, functionally a synonym for "treat dispenser") connotes sufficiently definite structure.

CLAIM CONSTRUCTION ORDER

- 9

example delivery module). As to the third claimed function, playing an audio signal, the delivery module will "initiate a sound (*e.g.,* play an audio signal, ring a bell, cause a local or remote audio device to output a sound) to notify the pet of the presence of a treat in the food tray, and stop playing the audio signal when the pet accesses the food tray to obtain the treat." *Id*., col. 9:16-21. Again, these examples all connote definite acts and structure. As to the fourth claimed function, receiving input, "[a]n input may include pushing an activation cover 110 . . . [or] a response lever or panel configured to make it easy for the dog to push with nose or paw, detecting motion (*e.g.,* via a motion detector of the ICCS), detecting a sound (*e.g*., a bark detected via a microphone of the ICCS), detecting heat (*e.g.,* via an infrared sensor), or the like." *Id*., col. 5:9-15. The Court concludes that the text in the specification, combined with the corresponding illustrations, sufficiently describes the "structure, material, or acts" corresponding to each of the functions recited in the claim term, saving the term from indefiniteness. 35 U.S.C. § 112(f).

### C. Disputed Constructions: Terms 3-6

As to each of the four remaining disputed claim terms at issue, Plaintiff urges a "plain and ordinary" meaning, as understood by a person of ordinary skill in the art. The burden rests with Tomofun to demonstrate that its proposed constructions are required by the claim language, the specification, or other intrinsic or extrinsic factors. *See Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1327 (Fed. Cir. 2002) (referencing the "'heavy presumption' that a claim term takes on its ordinary meaning").

#### 1. Term 3: "a treat delivery command" and "the treat delivery command"

DoggyPhone argues that the plain and ordinary meaning of a/the "treat delivery command" should control. Tomofun seeks construction of the phrase to mean a (or the) "*single*

treat delivery command." In essence, Tomofun would limit the claim to recite a single command that causes all three of the delivery module functions that follow: dispensing food, playing an audio signal, and receiving input from the pet. DoggyPhone, in contrast, urges that the person of ordinary skill in the art would understand the term to mean a "compilation or series of signals that together make up the 'treat delivery command,'" causing these functions. Pl.'s Opening Cl. Constr. Br. ("Pl.'s Br.") at 15.

Tomofun has not argued that the term would be misunderstood by a person of ordinary skill in the art, and it is undisputed that the claim itself does not use the word "single." However, Tomofun claims that "single" is implied in the grammatical structure of the claim, and that certain example embodiments in the specification repeatedly indicate that the appropriate construction of the term includes the limitation "singular." It also claims that DoggyPhone relied on the phrase "single received delivery command" in obtaining and defending the '813 patent, and that DoggyPhone should be held to that construction.

The Court concludes that while Tomofun's proposed construction based on the grammatical structure of the claim—what Tomofun referred to in the *Markman* hearing as the "gut logic read of the claim"—is plausible, there is nothing about the claim language itself that would *require* construction of the phrase to mean a/the "*single* treat delivery command." *See* Tr. at 37:17. As the Federal Circuit has noted, depending on the context, "a" does not necessarily indicate singular. *In re Varma*, 816 F.3d 1352, 1362 (Fed. Cir. 2016) ("'a' sometimes is non-restrictive as to number, permitting the presence of more than one of the objects following that indefinite article.").

Tomofun also argues that the specification "consistently describes a single command."

CLAIM CONSTRUCTION ORDER

- 11

1  Def.'s Br. at 18. As DoggyPhone notes, however, it is improper to import example embodiments

2  or limitations from the specification into a claim. *Intervet*, 617 F.3d at 1287 ("Construing the

3  claims in light of the specification does not . . . imply that limitations discussed in the

4  specification may be read into the claims. It is therefore important not to confuse exemplars or

5  preferred embodiments in the specification that serve to teach and enable the invention with

6  limitations that define the outer boundaries of claim scope."). Additionally, the Court notes that

7  the specification also includes reference to other embodiments in which the treat carousel may

8  rotate (and deliver treats) in response to decidedly plural "signals, commands, or other indications

9  received via various input devices." '813 Patent, col. 3:21-28.

10      The Court also concludes that Tomofun has not met its burden of demonstrating a "clear

11  and unambiguous disavowal" of the term's plain and ordinary meaning in obtaining or defending

12  the patent. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) ("[F]or

13  prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or

14  statements made during prosecution be both clear and unmistakable.") (quoting *Omega Eng'g,*

15  *Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)). In overstating its claim that

16  DoggyPhone "repeatedly argued that the claimed functions of the delivery module are caused by a

17  single treat delivery command," Tomofun only highlights the absence of any actual disavowal in

18  the prosecution history. Def.'s Br. at 15. DoggyPhone did use the phrase "a single received

19  command" in the context of distinguishing prior art in prosecution. ('813 FH, 10/28/2014 Appeal

20  Brief, Ex. 3 to Def.'s Br. at 39-40). However, use of that phrase came in the context of a more

21  general discussion that included what the command caused (*i.e.*, a "sequence of multiple

22  functions"), and was not focused on whether or not it was necessary for the command causing

CLAIM CONSTRUCTION ORDER

- 12

these responses to be singular. Such statements do not amount to an unambiguous disavowal of DoggyPhone's construction. Similarly, while Tomofun argues that DoggyPhone "implicitly asserted" the narrower construction in response to Tomofun's IPR petition, an "implicit assertion" also does not meet the "express relinquishment" standard that the law requires. Def.'s Br. at 16; *see Omega Eng'g,* 334 F.3d at 1323 ("claim terms carry their full ordinary and customary meaning," unless patentee "expressly relinquished claim scope during prosecution.").

In short, Tomofun has failed to show that the term should be construed to include the "single" limitation, or to have anything other than its plain and ordinary meaning.

### 2. Term 4: "*a control* that transmits to the delivery module a treat delivery command"

Tomofun's proposed construction would substitute "a computing device that includes a user actuated mechanism, such as a button, switch, or touchscreen" for "control." DoggyPhone rejects that construction, arguing that a person of ordinary skill in the art, with the help of the intrinsic record, would understand a "control" to be "of any form or nature, including but not limited to a user actuated mechanism as part of a computer device, a physical button, switch or touchscreen, a virtual control, or a series of signals," so long as that control can, as claimed, "transmit to the delivery module a treat delivery command." Pl.'s Br. at 16. DoggyPhone argues Tomofun's construction improperly imports limitations on what was actually claimed.

Tomofun, in turn, argues that its proposed construction "is consistent with the requirements of the claims" and "the intrinsic evidence," citing the patent claims, references in the specification, and statements made in prosecution, that it says support this position. Def.'s Br. at 23. That a proposed construction be "consistent with" the intrinsic evidence, however, is not the standard. Tomofun must overcome the starting presumption that a person of ordinary skill in the

CLAIM CONSTRUCTION ORDER

- 13

art would understand the term "control," which is DoggyPhone's position, and here it has failed to do so. *See Phillips*, 415 F.3d at 1316. Furthermore, nothing in the specification requires the limiting construction, and Tomofun has not pointed to any disavowal of the claim term in prosecution that would require its construction. Under these circumstances, the plain and ordinary meaning controls. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

Tomofun's proposed construction is not only unnecessary; it is also improper. DoggyPhone points out that the proposed construction would unjustifiably exclude certain embodiments referenced in the patent, such as a voice-activated control and, as DoggyPhone asserted at the *Markman* hearing, would "tak[e] out anything that's not mechanical." Tr. at 52:3-4; *see* '813 Patent, col. 7:43-49 ("During the communication session, the user may press keys or other input controls that generate sounds or issue a voice command word, that are configured . . . to perform certain functions, such as deliver a treat."). And, while Tomofun's proposed construction uses the phrase "including but not limited to" with reference to examples of several mechanisms, the Court agrees with DoggyPhone that such wording could cause jury confusion as to whether the claim is somehow limited to the category of explicitly listed mechanisms following that phrase, which would not be consistent with the specification. In short, Tomofun has failed to demonstrate its construction is allowed, let alone required, in construing the meaning of the term "control."

///

CLAIM CONSTRUCTION ORDER

- 14

3. **Terms 5(a) and 5(b): (a) "plays at least one of live audio or video received from the user of a remote client device" and "transmits to the remote client device at least one of live audio or video of the pet" and (b) "in response to input from the pet"**

    a. **"live audio or video"**

Tomofun asks the Court to construe the term "live audio or video" to mean "audio or video that is transmitted at the time of occurrence, not from a recording" the first time the term occurs in the claim, and "audio or video of the pet at the time of occurrence, not from a recording" the second time. DoggyPhone contends that the term "live audio or video" may be given its plain and ordinary meaning, which does not include the strict limitation—which nowhere occurs in the claim itself—that the audio or video be played or transmitted "at the time of occurrence" and "not from a recording." DoggyPhone contends that a person of ordinary skill in the art understands that the term "live audio or video" would not include these requirements. It is commonly understood, DoggyPhone argues, that "(1) there is no such thing as "real time," because there is always a lag caused by transmission over space, (2) time-shifting of "live" audio or video is commonplace; and (3) all modern transmission and playback technologies rely on buffering video/audio in memory, where it is recorded temporarily prior to being transmitted or displayed." Pl.'s Br. at 20.

Support for DoggyPhone's position is found in the intrinsic evidence. Adopting Tomofun's construction is impermissible because it would exclude the embodiments described in the specification, "given that all media transmissions are buffered and therefore recorded." Pl.'s Br. at 21. The Background of the '813 Patent explicitly links "live audio and video" with technology that a person of ordinary skill would understand transmits images, by necessity, not at the time of recording. *See* '813 Patent, Background, 1:23-25 (referencing "[l]ow cost Internet

CLAIM CONSTRUCTION ORDER

- 15

cameras (*e.g.,* Web cameras or 'web-cams') [that] are configured to transmit live audio and video feeds over the Internet").

Moreover, DoggyPhone is not claiming as unreasonably broad a meaning of "live" as Tomofun portrays. *See* Def.'s Resp. Br. at 1 ("DoggyPhone asserts that the plain and ordinary meaning of "live" means recorded and retrieved at any time, without restriction."). A person of ordinary skill in the art would understand the term "live"—in the context of the technology described in the embodiments—to mean *essentially* at the same time, while allowing for slight time delays, buffering, and playback as required by the limitations of the known technology (and physics). *See also* Tr. at 63:18-19 ("transmitted live" commonly understood to mean "sent . . at or about the time that it's captured"). Within the context of the patent—on which a person of ordinary skill in the art would be required to rely—"live" is also still bound by the requirement that transmission of audio and video enable communication between pet and owner: in other words, at essentially, but not necessarily precisely, the same time.

Tomofun argues that "[t]echnical and common usage dictionaries unanimously support" its construction. Def.'s Br. at 21. But resort to such extrinsic evidence is improper and unnecessary where, as here, the intrinsic evidence supports the patentee's construction. The Court therefore declines to adopt Tomofun's proposed construction and holds that the term "live video and audio" may be given its plain and ordinary meaning as set forth herein.

### b. "in response to input from the pet"

Tomofun asks the Court to construe the term "in response to input from the pet" in Claim 7 to mean "triggered by input from the pet." The original term, however, is not ambiguous, and was not disavowed in prosecution or the IPR proceedings, and would easily be understood by a

CLAIM CONSTRUCTION ORDER

- 16

person of ordinary skill in the art. Though DoggyPhone may have used "triggered" in connection with "in response to" several times in the IPR proceeding, it also used, at least once, the phrase "triggered or otherwise causally connected," making it fairly explicit that "in response to" need not be strictly construed to mean "triggered." *See* Pat. Owner's Prelim. Resp. at 16, Ex. 5 to Def.'s Br. Tomofun has failed to overcome the presumption that "in response to input from the pet" is properly construed to have its plain and ordinary meaning.

    **4. Term 6: "in response to the received treat delivery command: dispenses via the food dispenser at least one treat from the treat bin; plays via the audio device an audio signal that notifies the pet of availability of a treat; and receives input from the pet"**

Again, DoggyPhone proposes that the term be construed using its plain and ordinary meaning. Tomofun asks the Court to construe the term to mean:

> the received single treat delivery command triggering each of:
> operation of the food dispenser to dispense at least one treat from the treat bin;
> operation of the audio device to play an audio signal that notifies the pet of availability of a treat; and
> operation of at least one component of the treat delivery module to receive input from the pet.

This construction, according to Tomofun, is "clearer." Tomofun argues that the claim as written could mean that the delivery module *receives input from the pet in response to the treat delivery command*; and, since whether the pet provides such input in response to the command "is subject to the pet's whims and ultimately unknowable," the plain and ordinary meaning of the claim is indefinite. Def.'s Br. at 21 (citing *Intellectual Ventures I LLC v. T-Mobile USA*, 902 F.3d 1372, 1381 (Fed. Cir. 2018) (term that "depends on the unpredictable vagaries of any one person's opinion is indefinite")). It claims that its construction "clarifies that what must be responsive to the treat delivery command is the delivery module, not the pet." *Id*.

CLAIM CONSTRUCTION ORDER

- 17

The plain and ordinary meaning of the term as written would not, however, require such nonsensical construction. As written, it is adequately clear that it is the delivery module, not the pet, that must be responsive to the delivery command. It is the delivery module, after all, that is doing the receiving. And whether a trained dog will provide that input in response to the promise of a treat is less subject to whim than Tomofun suggests.

While the plain and ordinary meaning of the claim is clear, Tomofun, for its part, has not provided any support from the specification or prosecution history that would require its proposed construction. The plain and ordinary meaning of the term as written, being sufficiently definite and not clearly disavowed in prosecution, is the appropriate construction.

## IV.   CONCLUSION

For the foregoing reasons, the Court construes the disputed claims to have their plain and ordinary meaning, as set forth above.

DATED this 12th day of August, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge

CLAIM CONSTRUCTION ORDER

- 18