The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOGGYPHONE LLC,
 Plaintiff,

v.

TOMOFUN, LLC,
 Defendant

NO. 2:19-cv-1901-BJR

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

This matter comes before the Court on Plaintiff DoggyPhone, LLC's Motion for Partial Summary Judgment, and Defendant Tomofun, LLC's Motion for Summary Judgment. Dkt. Nos. 52 & 54. This case concerns U.S. Patent No. 9,723,813 ("the '813 patent"), owned by DoggyPhone. DoggyPhone has accused Tomofun's Furbo device of infringing Claim 7 of the '813 patent. Tomofun denies that the Furbo infringes the patent, and also argues that the patent is invalid. Having reviewed the parties' briefs in support of and in opposition to their motions, the attached exhibits and record, and the relevant case law, the Court finds and rules as follows.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 1

1

## II.     BACKGROUND

2     The '813 patent provides a system for facilitating remote human-pet communication, and

3 is referred to as an "Internet Canine Communication System," or "ICCS." The patent abstract

4 states, "[t]he ICCS may include a base station or similar device that is configured to deliver treats

5 to a dog and to transmit audio/visual communication between the dog and a remote client device

6 operated by a human user." '813 Patent, p. 1, Ex. 1 to Lowe Decl., Dkt. No. 53-1. Figures 7 and 8,

7 below, illustrate certain example embodiments of the patent:

8

9

10

11

12         

13

14

15

16

17

18

19

20

21

22

23     ORDER GRANTING DEFENDANT'S
       MOTION FOR SUMMARY JUDGMENT
24

25     - 2

Defendant Tomofun manufactures and sells the interactive pet camera device known as



the "Furbo," which DoggyPhone claims infringes the '813 patent. According to Tomofun, the Furbo is a "Dog Camera that enables a user to remotely see their pet, talk to their pet, and toss treats to their pet," via an app on the user's mobile device. Def.'s Mot. Summ. Judg. ("MSJ") at 5. Appearing here at left is an image of a Furbo.[1]

DoggyPhone has asserted Claim 7 of the '813 Patent against Tomofun. Claim 7 recites the following:

> 7. A system for communicating with a pet, comprising:
> a treat bin;
> a food dispenser that dispenses treats from the treat bin;
> an audio device;
> a delivery module that:
> receives a treat delivery command; and
> in response to the received treat delivery command:
> dispenses via the food dispenser at least one treat from the
>     treat bin;
> plays via audio device an audio signal that notifies the
>     pet of availability of a treat; and
> receives input from the pet; and
> a control that transmits to the delivery module a treat
>     delivery command,
> wherein the system:
> in response to a first communication command received
>     from a user, transmits to the delivery module the treat
>     delivery command;

---

[1] https://furbo.com/us/products/furbo-dog-camera

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 3

1

plays at least one of live audio or video received from the
  user of a remote client device; and

2

transmits to the remote client device at least one of live
  audio or video of the pet, wherein the system begins

3

  transmission to the remote client device of at least one
  of the audio or video of the pet in response to input

4

  from the pet.

5

'813 Patent, col. 12:15-39.

6

DoggyPhone filed the complaint on November 22, 2019, but this case was stayed by

7

court-approved stipulation in February 2021 pending resolution of Tomofun's challenge to the

8

validity of the patent in a petition for *inter partes* review. The Patent Trial and Appeal Board

9

denied that petition and a motion for reconsideration of that denial, and the Court lifted the stay in

10

January 2022. Both sides subsequently submitted opening claim construction briefs and

11

responses, and on June 24, 2022, the Court held a *Markman* claim construction hearing, at which

12

counsel presented oral argument. *See* Transcript of 6/24/22 *Markman* Hr'g, Dkt. No. 50. The

13

Court issued the Claim Construction Order on August 12, 2022. *See* Cl. Constr. Ord., Dkt. No. 51.

14

These Motions for Summary Judgment followed.

15

### III. DISCUSSION

16

#### A. Summary Judgment Standard in General and for Patent Infringement in Particular

17

Summary judgment should be granted "if the pleadings, depositions, answers to

18

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

19

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

20

matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The

21

opposing party may not rest upon mere allegations and denials in the pleadings, but must set

22

forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby,*

23

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

24

25

1    *Inc*., 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)).

2        Determining whether an accused device infringes a patent claim is a two-step process. The

3 first step is claim construction, which involves ascertaining the scope and meaning of the claim or

4 claims at issue. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir.

5 1995), *aff'd,* 517 U.S. 370 (1996). As noted, the Court has already received briefing, heard

6 argument, and issued an order on the disputed terms of the '813 patent. *See* Dkt. No. 51. Under

7 the second step, the trier of fact determines "whether the claims as construed read on the accused

8 device." *Kemco Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1359 (Fed. Cir. 2000) (quoting

9 *Streamfeeder, LLC v. Sure–Feed Sys., Inc.,* 175 F.3d 974, 981 (Fed.Cir.1999)). "To establish

10 literal infringement, every limitation set forth in a claim must be found in an accused product,

11 exactly." *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed. Cir. 1995), *cert.*

12 *denied,* 516 U.S. 987 (1995). "There can be no infringement as a matter of law if a claim

13 limitation is totally missing from the accused device." *London v. Carson Pirie Scott & Co.,* 946

14 F.2d 1534, 1539 (Fed. Cir. 1991). ("[E]ach element of a claim is material and essential, and [ ] in

15 order for a court to find infringement, the plaintiff must show the presence of every element or its

16 substantial equivalent in the accused device.").

17        This second step is a question of fact. *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353

18 (Fed.Cir.1998). However, in patent infringement cases, as in other types of cases, summary

19 judgment is appropriate if there is no genuine issue of material fact and the moving party is

20 entitled to judgment as a matter of law. *See Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co*., 66

21 F.3d 285, 289 (Fed.Cir.1995); *Southwall Techs.*, 54 F.3d at 1575.

22

23

24 ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

25

- 5

Both parties have moved for summary judgment. In its Motion for Partial[2] Summary Judgment, DoggyPhone goes through each limitation of Claim 7, and identifies the feature in the Furbo that it asserts infringes that limitation. DoggyPhone also argues that Tomofun is estopped from arguing invalidity of the '813 patent and that in any event, the patent is valid. In its motion, Tomofun argues that DoggyPhone has failed to set forth evidence of infringement as to several limitations of Claim 7 of the '813 patent. Tomofun also argues that the '813 patent is invalid as a matter of law. For the reasons that follow, the Court finds that DoggyPhone has not demonstrated, and cannot demonstrate, that the Furbo infringes at least three limitations of Claim 7, and that therefore, as a matter of law, the device does not infringe the '813 patent.[3]

**B. Defendant's Motion for Summary Judgment**

**1. Whether the Furbo Meets the "Delivery Module" Limitation of Claim 7**

*a. Construction of "Delivery Module"*

In its Claim Construction Order, the Court held that "delivery module" was a mean-plus-function limitation, to be construed pursuant to 35 U.S.C. § 112, ¶ 6. That statute provides:

> An element in a claim for a combination may be expressed as a means or step in performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification or equivalents thereof.

*See* Cl. Constr. Ord. at 8 ("'module' is a well-known nonce word that can operate as a substitute for 'means' in the context of § 112, para. 6") (citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015)). "A means-plus-function limitation recites a function to be

---

[2] DoggyPhone's motion is "Partial" because "[i]f granted . . . [it] leav[es] trial only on the issue of damages." Pl.'s MSJ at 1.
[3] Because this conclusion renders moot questions of both infringement of the remaining limitations, and validity of the patent, the Court does not reach those remaining issues.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

performed rather than definite structure or materials for performing that function." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998). Such a limitation is construed first by identifying the claimed function. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 324 F.3d 1308, 1318 (Fed. Cir. 2003). The limitation is then "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id*. (citing 35 U.S.C. § 112, ¶ 6).

After determining that "delivery module" was a means-plus-function limitation, the Court identified the four functions in the claim associated with that limitation. The delivery module: (1) receives a treat delivery command; and in response to the received treat delivery command; (2) dispenses a treat from the treat bin; (3) plays an audio signal to notify the pet of the treat; and (4) receives input from the pet. *See* '813 Patent, col. 12:19-26. The Court then identified in the specification some of the "structure, material, or acts" corresponding to each of these functions, and concluded that the "delivery module" limitation was not indefinite. *See* Cl. Constr. Ord. at 9-10 (citing 35 U.S.C. § 112, ¶ 6 and *Williamson*, 792 F.3d at 1348).

  *b.   Whether Furbo Infringes "Delivery Module" as Construed*

The next step in the infringement analysis is comparison of the construed claim to the accused device. In the case of a means-plus-function limitation, to find infringement the law "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Lockheed Martin,* 324 F.3d at 1320. A party may prove the structure in the accused device is equivalent to the disclosed structure by showing that the two perform the identical function in substantially the same way, with substantially the same result. *Kemco Sales, Inc. v. Control*

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

*Papers Co.,* 208 F.3d 1352, 1364 (Fed.Cir.2000); *see also Chiuminatta*, 145 F.3d at 1308 ("To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure,* and must find equivalent *structure* as well as *identity* of claimed *function* for that structure.") (citation omitted, emphasis in original). This has been called the "function-way-result test." *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128 (Fed. Cir. 2021). As the party asserting infringement, DoggyPhone bears the burden of proof on each and every one of these elements of the "delivery module" limitation. *Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1425 (Fed. Cir. 1997).

Tomofun argues that under this standard, the Furbo does not literally infringe the "delivery module" limitation of Claim 7 on several independent grounds. For the reasons stated below, the Court agrees with Tomofun that (1) the Furbo does not perform the function of "receives input from the pet" "in response to the received treat delivery command" at all, let alone using structure that is identical or equivalent to the structure that is disclosed in the specification; and (2) the Furbo does not perform the function "dispenses via the food dispenser at least one treat from the treat bin" using identical or equivalent structure as that disclosed in the '813 specification.[4]

---

[4] Tomofun argues that the Furbo does not include identical or equivalent structures corresponding to other functions of the delivery module limitation as well, but because failure to meet any one of these functions results in non-infringement, the Court need not discuss all of Tomofun's arguments here.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 8

>    *i.   The Furbo does not include a "delivery module" that, "in response to a*
>    *received treat delivery command," "receives input from the pet."*

As noted, to literally infringe a means-plus-function limitation, an accused device must

perform the identical function(s) disclosed in the patent, and furthermore, must do so with

identical or equivalent structure—that is, both in a substantially similar way, and with

substantially similar results—as the structure disclosed in the specification. *See Welker Bearing*

*Co. v. PHD, Inc.*, 550 F.3d 1090, 1099 (Fed. Cir. 2008) (citing *Applied Med. Resources Corp. v.*

*United States Surgical Corp.,* 448 F.3d 1324, 1333 (Fed.Cir.2006). One of the four functions

performed by the "delivery module" is: "in response to a received treat delivery command,"

"receives input from the pet." '813 Patent, col. 12:21-26.

Tomofun argues that no reasonable jury could conclude that the Furbo includes structure

for performing this function that is identical or equivalent to the structure disclosed in the

specification. The Court identified the disclosed structure in its Claim Construction Order: "[a]n

input may include pushing an activation cover . . . [or] a response lever or panel configured to

make it easy for the dog to push with nose or paw, detecting motion (e.g., via a motion detector

of the ICCS), detecting a sound (e.g., a bark detected via a microphone of the ICCS), detecting

heat (e.g., via an infrared sensor), or the like." Cl. Constr. Ord. at 10 (quoting '813 patent, col.

5:9-15). The Furbo undisputedly does not include an "activation cover, "response lever or panel"

a dog could push, a "motion detector," or a "heat detector."

The Furbo does include a microphone, which detects barking and captures sound for

transmission to the user's mobile device. Roberts First Supp. Exp. Rep., Ex. E to Def.'s MSJ, ¶

37. The Furbo microphone, however, is not identical or equivalent to the microphone disclosed

in the specification; it does not, in other words, perform the disclosed function in substantially

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

the same way, or with the substantially same result, as the structure disclosed in the specification. More specifically, the Furbo microphone does not receive input from the pet "in response to a received treat delivery command." *Id*. According to the undisputed testimony of Tomofun's expert, the Furbo microphone "is not responsive to the user's selection of the treat toss button" and in fact "operates independently from treat tossing." *Id*. The expert explains,

> The microphone of the Furbo Device is obviously already on before a user can select the treat toss function, as the interface element for the treat toss function is overlaid on the video output of the Furbo, with captured audio playing. Further, the only way for a user to initiate a treat toss is from the app screen where the video and audio are already playing.

*Id*. In other words, the microphone is already on whenever a treat delivery command is sent. Any input (*i.e.* barking or other sound) that the microphone receives from the pet—that is, if it receives any input at all—is at most merely *after*, or coincidental to, receipt of a treat delivery command, not "in response to" such receipt. DoggyPhone tacitly concedes this point. *See* Pl.'s Opp. to Def.'s Mot. at 11 ("There is no dispute that the Furbo's microphone receives input from the pet, for example a dog barking, after receipt of the treat delivery command.").

An event (receiving a pet's input) happening—if at all—*after* another event (receiving a command) is not "substantially the same" as that event happening *in response to* the other. DoggyPhone argues that all that is required is that the pet-input element be "causally connected" to the treat-delivery-command element. In the Furbo, however, receipt of a treat delivery command may or may not cause the response of input from the pet; and, conversely, the Furbo's microphone may receive input from the pet regardless of whether the device has first received a treat delivery command. As performed in the Furbo, these elements can therefore hardly be considered causally connected, let alone one "in response to" the other.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 10

1   Based on this analysis of the undisputed evidence, it is clear that the accused device does

2   not perform the identical "receives input from the pet" function as that disclosed in the delivery

3   module limitation *at all*; let alone using structure that is identical or equivalent to the disclosed

4   structure.[5] The Court concludes no reasonable jury could so find, and that Tomofun is therefore

5   entitled to summary judgment of non-infringement.

6           ii.     *The Furbo does not include structure that "dispenses via the food dispenser at*
            *least one treat from the treat bin" that is identical or equivalent to structure*
7           *disclosed in the Asserted Claim.*

8               (a) *The two structures are not identical.*

9   A second function performed by the "delivery module," recited in Claim 7, is "dispenses

10  via the food dispenser at least one treat from the treat bin," also "in response to receipt of a treat

11  delivery command." *See* Cl. Constr. Ord. at 9 (citing '813 patent, col. 12:22-23).

12          Tomofun concedes that the Furbo performs this function, but argues that it does so using

13  structure that is neither identical nor equivalent to the structure that is disclosed in the '813 patent

14  specification. In its Claim Construction Order, the Court concluded that the specification

15  disclosed adequate structure corresponding to the delivery module limitation's function of

16  "dispenses . . . at least one treat," and for that reason, among others, the limitation was not

17  indefinite under 35 U.S.C. § 112, ¶ 6. The "structural elements that correspond to the treat

18  delivery function" that the Court identified was a mechanism, "*e.g.*, including one or more of a

19

20  ---
    [5] Neither party in their motions for summary judgment substantively addresses whether the accused device infringes
    the '813 patent under the doctrine of equivalents. However, "[b]ecause the "way" and "result" prongs are the same
21  under both the section 112, paragraph 6 and doctrine of equivalents tests, a structure failing the section 112,
    paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s). . . .
22  When a court determines that the "way" and/or "result" is/are substantially different under a section 112, paragraph
    6 equivalents analysis, a patentee cannot prevail under the doctrine of equivalents for the same reason(s)." *Kemco*
    *Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1364-65 (Fed. Cir. 2000). Thus, the accused device here is also, as
23  a matter of law, non-infringing under the doctrine of equivalents.

24  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT

25

carousel, slide, bin, actuator, motor[] for delivering treats." Cl. Constr. Ord. at 9 (citing '813 patent, col. 6:49-50).

Tomofun's expert has opined, however, that "the Furbo does not include any carousel or equivalent structure." *Id.*, ¶ 29. As the expert explains, the Furbo performs the "dispenses via the food dispenser at least one treat from the treat bin" function using structure involving two pistons (also referred to as a "ram" and "catapult") and two treat holding areas, with a door that opens between them. The Furbo:

> includes a first piston that extends upward to move a treat from a primary holding area to a secondary holding area for the treat. A door is opened to the secondary holding area as the first piston extends upward. A second piston is provided on the bottom of the secondary holding area. . . . The second piston retracts, and then quickly extends to launch the treat from the secondary holding area to the surface adjacent to the Furbo.

Roberts First Supp. Exp. Rep., ¶ 28 (figure references omitted).

DoggyPhone does not dispute that the Furbo does not include a carousel. It argues that the Furbo's structure is nevertheless the "same or equivalent" to structure disclosed in the specification. DoggyPhone focuses on a single phrase from the specification, quoted in the Claim Construction Order, disclosing a structure that includes "*e.g.*, one or more of a carousel, slide, bin, actuator, motor." Cl. Constr. Ord. at 9 (citing '813 patent, col. 6:49-50). DoggyPhone argues based on this phrase that all the specification requires is that the structure include "one or more" of the disclosed components (*e.g.* carousel, slide, bin, etc.). Since a piston is an "actuator," and the Furbo also includes a motor, the Furbo structure in fact contains two of them. Its structure is thus, DoggyPhone argues, identical to the structure disclosed in the specification, as construed by this Court.

In making this argument, DoggyPhone reads the Court's claim construction order too

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 12

narrowly.[6] That Order cites one specific reference in the specification to a list of several components comprising the carousel structure, but in fact there are numerous references to the carousel structure in the specification. In fact, the carousel structure is the *only disclosed structure* corresponding to the delivery module's "dispenses via the food dispenser at least one treat from the treat bin" function. The carousel structure—and only the carousel structure—is disclosed as corresponding to this function, repeatedly and consistently, in both the drawings and text of the specification, across several different embodiments. For example, the specification states, "[i]n particular, pressing the call dog button remotely activates the bell, light, and carousel motor. The carousel tray rotates, sending a treat onto the food tray." '813 patent, col. 4:55-58 (figure references omitted). Elsewhere, the specification discloses "[p]ushing the 'give treat' button activates the rotation of the carousel." *Id*., 5:22-23 (figure references omitted); *see also id*., 8:53-



FIG.3

59 ("In some embodiments, the treat carousel of the ICCS is configured to facilitate selection of a specific treat for the pet. . . In response to receiving the command, the ICCS rotates the treat carousel to the selected compartment and delivers a treat therefrom."). Similarly, the pictorial representations of the carousel structure include several figures, including Fig. 3, shown here.[7] *See also* Fig. 4,

---

[6] DoggyPhone reads the Claim Construction Order as holding "that only a single component is required to be present." Pl.'s Reply at 3. The flaw in this reading is highlighted by the fact that several of the "one or more" listed elements—the "motor," for example— would not, alone, have provided sufficiently definite structure for performing the treat dispensing function, required under 35 U.S.C. § 112 ¶ 6 for the "delivery module" means plus function limitation. Adoption of DoggyPhone's strained interpretation would have required a finding of invalidity of the delivery module limitation for indefiniteness.

[7] "FIG. 3 is an isometric view illustrating a treat carousel of the example Internet Canine Communication System 100. FIG. 3 shows the ICCS 100 with its top open, showing an open-bottom treat carousel resting on a carousel floor

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

which "shows the carousel floor layer with the carousel removed"; and Fig. 5, which "illustrates a carousel motor located in the interior of the example Internet Canine Communication System 100." *Id.*, 3:9-10, 15-16 (figure references omitted).

"The literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim language is sharply limited to the structure disclosed in the specification and its equivalents." *J & M Corp. v. Harley–Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed.Cir.2001). The patent here discloses—repeatedly and in some detail—a single structure associated with the delivery module's "dispenses via the food dispenser at least one treat from the treat bin" function. Where a patentee has chosen to express a limitation as a means-plus-function limitation, and discloses "only one specific type" of structure for performing a function of that limitation, "the corresponding structure should be limited to that specific structure and its equivalents." *Bennett Marine, Inc. v. Lenco Marine, Inc.*, 549 F. App'x 947, 954 (Fed. Cir. 2013) ("The '780 patent discloses only one specific type of circuit to perform part of the function required by the fifth limitation. In such a situation, the corresponding structure should be limited to that specific structure and its equivalents, rather than any circuit capable of performing the required function."). No structure corresponding to the delivery module's function of dispensing treats, other than the carousel structure, is disclosed in the specification.[8] Certainly, the specification does not disclose a piston-based system, or describe any structure resembling the

---

layer. The treat carousel contains multiple individual treat compartments, such as compartments 132a and 132b, each housing a respective treat 134a and 134b. An opening in the carousel floor layer is visible through the open-bottom carousel." '813 patent, col. 2:58-66 (figure references omitted).

[8] The specification does state "Note that other embodiments may have different mechanisms or employ different techniques for delivering treats," but does not describe any structure for delivering treats that these embodiments might include. '813 patent, col. 5:3-4.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Furbo's dual piston and separate-chambers structure. The Court accordingly finds that no reasonable jury could conclude that the treat-dispensing structures in the '813 patent and the accused device are identical.

*(b) The two structures are not equivalent.*

Nor could any reasonable jury find that the disclosed and accused structures are equivalent. Again, the test for structural equivalence is whether the two structures perform the function at issue in substantially the same way, and with substantially the same results. *See Traxcell Techs.*, 15 F.4th at 1128. The carousel structure of the patent, and the piston structure of the Furbo, do not perform the "dispenses via the food dispenser at least one treat from the treat bin" function in substantially the same way. *See Chiuminatta*, 145 F.3d at 1308 (where "[t]he specification clearly identifies the structure performing [the surface-supporting] function as the skid plate," and the structure in the accused device corresponding to that function is "soft round wheels" that "rotate as opposed to skid," "no reasonable jury could have found that the accused device has an equivalent to the disclosed structure."); *see also Kemco Sales,* 208 F.3d at 1365 ("[B]oth the accused and disclosed structures perform the identical function, which is to close the envelope. However, unlike the disclosed flap, which closes by folding over the envelope, the dual-lip structure closes the accused envelope in a different way by meeting together and binding via the internal adhesive.").

Here, the difference in the way that the two structures operate is at least as substantial as the difference in the way the disclosed and accused structures operated in *Chiuminatta* and *Kemco Sales*, in which the court found the accused structures were non-infringing as a matter of law. According to a typical description in the specification of the way the carousel structure operates, a

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 15

user "activates the carousel motor to rotate and advance the carousel until the next treat compartment is positioned above the opening in the carousel floor layer. Upon rotation of the carousel, the treat drops through the opening, down the treat slide, and onto the food tray." '813 patent, col. 4:9-14 (figure references omitted). The "way" that the Furbo dispenses a treat is markedly different. In the Furbo, as described by Tomofun's expert, "[t]here are two phases to the mechanical actuation that results in the treat being available for the pet. In the first phase, a "ram" is raised from the bottom of a hopper and a treat is pushed into position in a "catapult." In the second phase, the "catapult" is released and the treat is ejected from the device." Roberts Exp. Rep. of Non-Infringement, ¶ 201, Ex. 14 to Lowe Decl. The Furbo does not include a slide or chute, or an open-bottomed floor through which the treat drops, and it undisputedly does not include a carousel.

Based on a comparison of the operation of these structures, Tomofun's expert opines that "the Furbo's structure for ejecting treats is a significantly different "way" than the structure and acts identified by the Court for dispensing a treat from the treat bin." Roberts First Suppl. Exp. Rep., ¶ 29. DoggyPhone—which bears the burden of proving infringement—has not even argued that the carousel and piston structures operate in substantially the same way, let alone presented any evidence contradicting this opinion. The Court therefore concludes that no reasonable jury could find that the Furbo includes a "delivery module" that, "in response to a received treat delivery command," "dispenses via the food dispenser at least one treat from the treat bin" using identical or equivalent structure as that disclosed in the '813 patent; and that for this reason as well, Tomofun is entitled to summary judgment of non-infringement.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1

2

     **2.   Whether the Furbo Meets the Limitation "Begins Transmission to the Remote Client Device of Live Audio or Video of the Pet in Response to Input From the Pet"**

3

     Finally, the Court holds that the Furbo does not infringe the '813 patent for the additional

4

and independently sufficient reason that the accused device does not meet the limitation "begins



5

transmission to the remote client device of live

6

audio or video of the pet in response to input from

7

the pet" disclosed in Claim 7. '813 patent, col.

8

12:36-39. It is DoggyPhone's position that the

9

Furbo meets this limitation through both (1) the

10

"Real-Time Barking Alert" feature, which is

11

included with every Furbo, and (2) the optional

12

"Dog Nanny (Real-time Smart Alerts + Cloud

13

Recording)" feature, available to Furbo users with

14

a subscription. Pl.'s MSJ at 12. In general terms,

15

these features transmit video and audio of the pet

16

*Figure 7: A barking alert notification.*   to the Furbo owner's mobile device; in the case of

17

the "Real-Time Barking Alert," after the pet activates the alert (*e.g.* by barking), and in the case of

18

the "Dog Nanny," by recording video and audio of the pet for storage in the cloud, available for

19

later retrieval and playback. *Id*.

20

     Tomofun denies that either system meets the limitation "begins transmission to the remote

21

client device of live audio or video of the pet in response to input from the pet." As to the first

22

"Barking Alert" feature, according to Tomofun's expert, the "barking alerts do not include any

23

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

24

25

audio or video, they simply include text." Roberts First Supp. Exp. Rep., ¶ 61. Appearing here is a

sample screenshot of the alert received on the user's mobile device when the Furbo receives

"input from the pet"—*i.e.*, when the pet's barking activates the barking alert. *See id*. According to

Tomofun's expert, in testimony that is unrebutted, "transmission of video" of the pet is

"responsive to the user's action, not to input from the pet." Describing the Furbo's barking alert

functionality further, the expert explains,

> This distinction is demonstrated, first, by the fact that if the user never selects the barking alert notification and instead clears it or ignores it, video is never transmitted to the user client device, showing that the pet's input does not cause the beginning of transmission of that video. . . .[9] Second, this distinction is further demonstrated by the fact that the user can select the barking alert notification at any time after the barking alert notification is received, and the video that the user sees is live at the time they select the alert (not at the time of the notification) and is responsive to the user's action, not to the input from the pet.

*Id.,* ¶ 62. Regarding the Doggy Nanny feature, Tomofun quotes DoggyPhone's own infringement

contentions as describing a function that does not meet the disclosed limitation. According to

those contentions, the Furbo in Dog Nanny mode "transmits live video to the cloud for recording.

. . . If the user clicks on the received alert, the recorded video is transmitted to the user's mobile

app/device." *Id*., ¶¶ 57, 64. According to Tomofun's expert, this sequence describes transmission

of *recorded* video, not *live* video, to the user's device. It also describes transmission that begins

not in response to input from the pet, but in response to the user clicking on a received alert. *Id*., ¶

65.

DoggyPhone does not dispute Tomofun's description of the Furbo's functionality, and in

fact all but concedes that neither of the two features meets the "begins transmission . . . in

---

[9] "Note that the notification in Fig. 7 is already 6 minutes old, and no video has begun being transmitted to the device."

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 18

response to input from the pet" element of the limitation. Regarding the Barking Alert, DoggyPhone states, "Furbo transmits a notification to the user's mobile device and *begins transmission* of audio and/or video of the pet to the user's mobile device *when the user clicks on the received notification*." Pl.'s MSJ at 12 (emphasis added). Logically speaking, if transmission begins when (and if) the user clicks on the notification, it has up to that point not yet begun, despite the fact that input from the pet has already been received. In a similar admission with reference to the Dog Nanny mode, DoggyPhone states "Furbo transmits a notification to the user's mobile device and *begins transmission* of audio and/video of the pet to the user's mobile device *when the user clicks on the received notification*." *Id*. (emphasis added). With respect to this Dog Nanny feature, DoggyPhone has further admitted that what is transmitted *to the cloud* when input from the pet activates the feature is "live video," which necessarily, therefore, cannot be "live" if and when that same recording is later transmitted to the user's mobile device, which is what the limitation requires. *See* Dkt. 54-3, Ex. C, DoggyPhone Rule 26(a)(2)(C) Disclosure Suppl. at 8 ("If the user clicks on the received alert, the *recorded* video is transmitted to the user's mobile app/device.") (emphasis added); *see also* Cl. Constr. Ord. at 16 (a "person of ordinary skill in the art would understand the term 'live'—in the context of the technology described in the embodiments—to mean essentially at the same time.").

Instead, DoggyPhone argues that the Furbo meets this limitation "because the received input (*e.g.,* barking, running, eating) causes video of the pet to be transmitted to the mobile device." Pl.'s Mot. SJ at 13. However, pet input does *not* always cause transmission of live audio/video to the user's mobile device; the undisputed evidence is that in the case of the Barking Alert functionality, no such transmission occurs if the user never responds to the Barking Alert

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 19

notification. It occurs only if and when the user responds to the alert notification. With regard to the Dog Nanny function, pet input begins transmission of live video *to the cloud*; what may be later transmitted to the user's device is that (no longer live) recording, which in any event begins with the user's response to a notification, not with the pet's input.

Furthermore, the limitation does not disclose transmission that is "caused" by pet input; it requires that transmission "*begins*" with pet input. DoggyPhone asks the Court to read the limitation to mean, essentially, that the pet's input begins a process which may result in transmission of live video to the user's mobile device. Pl.'s MSJ at 14 ("[I]t does not matter whether there are any intervening actions taken (or required) by the user to view the video of the pet at the mobile device because the dog's input (*e.g.*, barking) is part of the causal chain that causes video to be sent."). This reading defies the plain meaning of "begins," finds no support in the record, and quite simply is not what the limitation discloses. For this reason as well, the Court concludes that no reasonable jury could find that the Furbo—either in its Barking Alert function or Doggy Nanny function—infringes this limitation of the '813 patent, and that Tomofun is therefore entitled to summary judgment of non-infringement.

## IV.   CONCLUSION

For the three independently sufficient reasons articulated above, the Court holds that the Furbo does not infringe the '813 patent as a matter of law, and enters judgment of non-infringement in favor of Defendant Tomofun. For the same reasons articulated herein, DoggyPhone's Motion for Partial Summary Judgment is denied. This matter is, accordingly, dismissed.

In addition, the unopposed Motion to Seal, Dkt. No. 57, is granted; Tomofun's Motion to

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Strike DoggyPhone's Expert Designations, Dkt. No. 59, is denied as moot, as the Court did not rely on any testimony of those purported experts in reaching its conclusion.

DATED this 24th day of February, 2023.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

- 21